## DUNN *v.* TOZER *et al.*

| 10   167 |
| 110   461 |

Where a defect of parties is apparent upon the face of the complaint, the objection must be taken by demurrer, or the same will be waived.

The fact that both husband and wife were anxious to sell their homestead, and the husband made repeated efforts for that purpose, but failed because a satisfactory price could not be obtained, does not show an intention to abandon the homestead as such.

Where property has been dedicated as a homestead, the husband and wife become joint owners thereof, with the right of survivorship, and their declarations of intention to sell and remove from the premises will not constitute an abandonment.

Nor will the declarations of the husband bind the wife. The act of the wife in going with her husband to reside upon another place, will in no way affect her right.

The only way in which the right of the wife to the homestead can be extinguished, is by a joint deed executed by both husband and wife, and properly acknowledged.

The right of homestead having once attached, and not having been alienated, a deed from the sheriff, under an execution against the husband, would be a cloud upon the title, and prevent the free alienation of the property by the husband and wife.

APPEAL from the District Court of the Sixth Judicial District, County of Sacramento.

The facts necessary to understand the points decided, appear in the opinion of the Court.

*Robert F. Morrison* for Appellant.

The first question presented, relates to a defect of parties plaintiff; and indeed this was the point upon which the Court below decided the case in favor of the defendants.

I am free to confess that it would have been better pleading to have made Mrs. Dunn a party plaintiff; but the question arises, " is it not now too late for the defendants to avail themselves of the alleged defect in the complaint?" The defendants did not demur to the complaint, nor did they set up in their answer a defect of parties plaintiff. The two cases referred to by defendants' counsel as having been decided by the Court, to wit: Poole *v.* Gerrard, 6 Cal., 71, and Kraemer et al *v.* Revalk, 8 Cal., 74, are not authorities in this case; and even if they were, the later case of The California Steam Navigation Company *v.* Wright, 8 Cal., 585, is later and better authority. It is not deemed necessary to do more in presenting this point, than simply to call the attention of the Court to the language of Justice Burnett, in the case last referred to, which was sanctioned by a full bench.

The next question, then, is, was the property in question ever impressed with the character of a homestead? Indeed, I can not conceive how there can be two opinions on this point. The plaintiff bought the property for a homestead, he claimed it and spoke of it repeatedly as such, and he lived upon it about eighteen months with his family. Can it be contended, in view of

these facts, which are clearly established, that the property was never the homestead of the plaintiff? It would be a difficult matter to establish the fact of the selection of property for a homestead by stronger proof; and, in addition to this, it is shown that the plaintiff is not the owner of any other land in this State.

The next question is, has the plaintiff's right of homestead been destroyed? I answer emphatically that it has not; and in support of this, I rely with confidence on the decisions of this Court.

In the case of Taylor *v.* Hargous, 4 Cal., 268, this Court says: "The removal of husband and wife from a homestead thus selected, after and in consequence of a sale and conveyance by the husband, in which the wife did not join, furnishes no evidence of an abandonment of the homestead by her, but seems to be the very case against which the statute intended to provide." "As soon as a place acquires the character of a homestead, it is immaterial how the title to the property originated; whether it was the separate property of husband or wife, or the common property of both. It becomes a sort of joint-tenancy, with the right of survivorship as between husband and wife, and this estate can not be altered or destroyed, except by the concurrence of both, in the manner prescribed by law, unless it be in favor of an innocent purchaser without notice."

It is believed that the above decision is sound law, and if so, it is the decision of the case under consideration. There is not the slightest pretext for stating that Mrs. Dunn ever "altered or destroyed the estate in the manner provided by law." Neither is there any pretext for saying that Tozer was an innocent purchaser without notice.

It is not shown in the statement that Tozer ever had any conversation with Mrs. Dunn about the property, and it is not shown that he had any information whatever in regard to the statements represented to have been made by her. In addition to this, it appears from the evidence that Tozer purchased at sheriff's sale, at a price greatly below the real value of the property. I have yet to learn that a purchaser at sheriff's sale is considered by law an innocent purchaser without notice. The rule is, as I understand it, that he simply gets the title of the judgment-debtors; and the doctrine of *caveat emptor* applies in all cases of judicial sales. It is not deemed necessary to cite authorities on this point.

*J. C. Zabriskie* for Respondents.

In an action to secure the rights of homestead, the husband and wife must both join, without which the Court can not consider the case. Poole *v.* Gerrard, 6 Cal. R., 71; Kraemer *v.* Revalk, 8 Cal. R., 74.

An action must be brought by husband and wife where the cause of action would necessarily survive to her.   5 Bacon's Ab., 299, and fol. ; 1 Chitty on Pleadings, 9, and fol. ; 1 Monell's Practice, 821 ; 11 Wendell, 271 ; 18 Johnson, 443 ; 4 Kent, 380.

In Cook *v*. McChristian, 4 Cal. Rep., 23, and all subsequent decisions, the following proposition is laid down :   The homestead is the dwelling place of the family, where they permanently reside.   And in Reynolds *v*. Pixley, 6 Cal. R., 165, it is declared that " residence is the test by which the fact of dedication of a homestead is to be determined."

The rule thus laid down is reasonable, and, in the absence of a provision in the statute requiring notice, is the only feasible mode by which notice can be imparted.

In the case of Holden *v*. Pinney, 6 Cal. R., 234, it is declared that when the premises have acquired the character of a homestead by actual occupation, with that intention, the estate thus created can not be destroyed except by the concurrence of both husband and wife ; neither will their removal from the premises operate as an abandonment.

The question of homestead is a question of fact, and the presumption arising from residence may be defeated by facts and circumstances *aliunde*.

If residence will establish the fact of an intention to dedicate property as a homestead, it is difficult to understand why a removal from such premises, and a residence elsewhere for a longer period, will not establish the fact of abandonment.   I know of no principle of law in conflict with such a conclusion, and it is certainly in consonance with common sense, equity, and justice. The law intends one dedication only.   The decisions of the Supreme Court require residence to establish that intention.   So far, the benevolent purpose both of the law-makers and of the law itself are carried into effect.   But if a party can impress a dozen localities with the character of a homestead by a short residence with his family upon each, he practically acquires a legal right to a dozen homesteads, instead of one.   This would seem to involve an absurdity.   The principles which have been from time to time enunciated by the Supreme Court in relation to the rights of homestead, present apparent inconsistencies, if not contradictions, and the great importance of the subject, both to the public at large as well as to individual citizens, would seem to demand that the interests involved in those rights should be more clearly defined.

The decision last referred to does not affect the rights of the defendant in this action, for it permits the Court and the jury to determine from the facts of the case, whether or not the property in question was ever dedicated as a homestead.

The evidence of record discloses the fact that shortly after Dunn and his family went upon the property, Dunn placed it in

charge of an agent, for sale, who advertised and sought to sell it. The efforts were continued until the sale by the sheriff. Dunn and his wife both declared, at different times, that they did not intend to and would not remain there, and Dunn stated that his object in selling was to obtain money to buy stock for his rancho. During this time, Dunn and his family resided upon a rancho in Petaluma, but had an agent and attorney here. The above facts and circumstances must necessarily defeat the presumption arising from the residence of Dunn and his family upon the premises.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The plaintiff claimed the lots in dispute as a homestead. They were sold by the defendant White, as sheriff of Sacramento county, to defendant Tozer, under an execution against the plaintiff, and a certificate of sale executed by the sheriff. This was a bill to set aside the certificate, and to restrain the sheriff from executing a deed to Tozer. The Court below dismissed the plaintiff's bill, and the plaintiff appealed.

It is objected in this Court, for the first time, by the counsel of defendant Tozer, that the wife of plaintiff was not joined with him in the suit. This defect was apparent upon the face of the complaint, and the defendant might have demurred. The counsel of plaintiff insists that the objection was waived by a failure to demur.

It has been repeatedly decided by this Court, that where a defect of parties is apparent upon the face of the complaint, the objection must be taken by demurrer, or the same will be waived. (Warner v. Wilson, 4 Cal. Rep., 252; Andrews v. Mokelumne Hill Company, 7 Cal. Rep., 330; Alvarez v. Brannan, Ib., 503.)

It is expressly provided, in section forty-five of the Code, that an objection of this character, if apparent upon the face of the complaint, is waived by a failure to demur.

Having disposed of this point, we come to the merits of the case. It appears that the plaintiff purchased the property in the month of April, 1855, with the intention of making it a home for his family; that he moved to and resided with his family upon the premises for about thirteen months. About the time the plaintiff purchased the premises in controversy, he owned a farm, which he sold; and with the proceeds of the sale, the witness thought he purchased the lots and improvements, which are of the value of $2,500.

The fact of the dedication of the premises as a homestead seems to have been satisfactorily established. It was clearly proved that the plaintiff declared, at the time he was purchasing the property, and afterwards, that he designed it for a home-

stead; and he resided with his family upon the place for some thirteen months, when he left and went to Petaluma to occupy rented land for the purpose of carrying on a dairy. It was shown that the plaintiff owned no other real estate.

For the purpose of rebutting this proof, and for the further purpose of proving an abandonment of the homestead, the defendants proved that plaintiff, in January or February, 1856, employed J. R. Adkins to sell the property—the plaintiff stating that he must sell for cash, as he intended to purchase stock for his rancho with the proceeds. Shortly after the agent was employed he visited the premises, and Mrs. Dunn stated that she was fully satisfied with her husband's purpose to sell the place— that she could not live there, and would never return to it if she could get away. The plaintiff, likewise, told the agent that the family could not live there, as their animals had been poisoned, and they desired a more active life. The property was advertised and put up at auction, and bid in by some one for the plaintiff. The plaintiff and family left in May, 1856, and the premises were sold by the sheriff on September 23d, 1856. The defendants also proved, by a witness to whom the plaintiff had rented the property, that the plaintiff declared, about the time he left for Petaluma, he wished to sell the premises because he thought them bewitched. But we can not see, in all this, any evidence either that the plaintiff and wife never intended to dedicate the premises as a homestead, or that they intended to abandon them after they were so dedicated. The plaintiff sold his farm about the time he purchased the premises, and afterwards owned no other place he could call his homestead; he rented out the property and left an agent to collect the rents, and came several times to see about it. The tenant, having failed to pay the rent, and refusing to give up the property, was sued by the plaintiff, and expelled by the process of the law. The fact that both husband and wife were anxious and willing to sell the place, for the reasons stated, and that repeated efforts were made by the husband to accomplish this purpose, (which efforts failed because a satisfactory price could not be had,) does not show any intention to *abandon,* but only to *sell,* their homestead. All the conduct of husband and wife was strictly consistent with their homestead right. No deed was offered to be made by the husband alone for the property.

Besides this view of the case, it seems clear, from the testimony, that plaintiff and his wife had no wish to sell the premises until some nine months after they were dedicated as a homestead. They had become joint owners of the property, with the right of survivorship; and their declarations and removal from the premises could not constitute an abandonment. The declarations of the husband could not bind the wife; and the act of going with her husband to reside upon another place could in no

way affect her right.    There is only one way in which the right of the wife to the homestead can be extinguished, and that is by a joint deed, executed by both husband and wife, and properly acknowledged by the wife.    (Dorsey v. McFarland, 7 Cal., 342; and the cases there cited.)

The right of homestead having once attached, and not having been alienated, the deed from the sheriff would be a cloud upon the title, and prevent the free alienation of the property by husband and wife.    (Dorsey v. McFarland.)

Under the view we have taken, the decree of the District Court must be reversed, and the cause remanded, with directions to enter a decree for plaintiff.