[L. A. No. 2890. Department Two.—June 27, 1912.]

J. L. AHLERS et al., Copartners doing business under the firm name of Ahlers & East, Respondents, v. A. J. SMILEY et al., Copartners doing business at present under the firm name of Smiley & Smith, but formerly doing business under the firm name of Smiley & Wells, Appellants.

PLEADING—BREACH OF CONTRACT—PLAINTIFFS SUING AS "FORMERLY COPARTNERS"—AMENDMENT—CHANGE OF CAUSE OF ACTION.—A cause of action to recover damages for breach of a contract, as set forth in an original complaint in which the plaintiffs were described as

"formerly copartners," is not changed by an amendment which averred that the plaintiffs continued to be copartners in the subject matter of the cause of action.

ID.—STATUTE OF LIMITATIONS—BREACH OF WRITTEN CONTRACT.—An action to recover damages for the breach of a written contract is founded upon a written instrument, within the meaning of subdivision 1 of section 337 of the Code of Civil Procedure, providing a four years' limitation for the commencement of such actions.

ID.—CONTRACT TO PURCHASE AS REQUIRED IN BUSINESS—ABILITY TO FURNISH AFTER BREACH.—In an action by a manufacturer of ice to recover damages for breach of a contract by the terms of which the defendant, a retail dealer, agreed to purchase all the ice necessary for him to supply his customers, the plaintiff, as a condition of recovery, need not show that he was in a position to deliver ice after the date of the defendants' breach of the contract.

ID.—MEASURE OF DAMAGES—DIFFERENCE BETWEEN COST OF MANUFACTURE AND CONTRACT PRICE—SPECIAL DAMAGE NEED NOT BE ALLEGED.—Under section 1512 of the Civil Code, the measure of damages for breach of such a contract is the difference between the cost of manufacturing the ice and the contract price. Such loss of profits, being the natural result of the contract and implied from a breach, may be recovered without allegation of special damages.

ID.—ESTOPPEL—INJUNCTION AGAINST BREACH OF CONTRACT.—The manufacturer, by electing to sue for an injunction against the violation of such contract, was not estopped from maintaining a subsequent action for its breach.

APPEAL from a judgment of the Superior Court of Orange County and from an order refusing a new trial. Z. B. West, Judge.

The facts are stated in the opinion of the court.

F. O. Daniel, for Appellants.

E. E. Keech, for Respondents.

MELVIN, J.—Defendants appeal from a judgment against them and from an order denying their motion for a new trial. The action was one for damages for the violation of a certain contract. Ahlers & East were copartners engaged in the business, among other things, of manufacturing ice. Defendants, also copartners, were retailers of ice. By the terms of the contract, the firm of Ahlers & East agreed to furnish to defendants at the price of four dollars per ton all of the ice

necessary for defendants to supply their customers. Under
this agreement the plaintiff copartnership continued to fur-
nish and the defendants to receive large quantities of ice
until July 24, 1905, when the latter refused longer to abide
by the terms of the contract and thereafter furnished their
customers with ice purchased from the Union Ice Company
and other manufacturers. On July 28, 1905, an action was
brought to restrain defendants from purchasing ice from any
other manufactory than that of Ahlers & East. Judgment
enjoining them from the violation of their contract was en-
tered March 15, 1906. From this judgment defendants
appealed, but as they had abandoned the business of selling
ice, they failed to file a transcript in this court and their
appeal was dismissed.

On September 6, 1907, the plaintiffs sued for damages and
after trial were awarded the sum of four hundred and eighty
dollars. This judgment and an order denying a motion for
a new trial were reversed on appeal, but leave was granted
to file amended pleadings (*Ahlers* v. *Smiley,* 11 Cal. App.
343, [104 Pac. 997]). On December 14, 1909, a "second
amended complaint" was filed but a demurrer to it having
been sustained with leave to amend, a "third amended com-
plaint" was filed. After a demurrer and a motion to strike
out had been denied, defendants answered; upon the issues
then joined a trial was had and judgment was given in favor
of plaintiffs for the sum of two thousand two hundred and
fifty dollars.

Defendants take the position that the demurrer to the
"third amended complaint" should have been sustained or
the motion to strike it out should have been granted because it
states a different cause of action from that originally alleged.
In their initial complaint for damages plaintiffs were de-
scribed in the caption as "formerly copartners doing business
under the firm name of Ahlers & East." In the body of the
pleading they alleged the dissolution of the copartnership in
June, 1906. There is also the averment that "on and after
July 24, 1905, and until the entry of said judgment on March
15, 1906, these plaintiffs as such copartners were able, willing
and ready to perform all the conditions and covenants on their
part contained in said contract." The caption of the third
amended complaint describes them as "copartners doing busi-

ness under the firm name of Ahlers & East." There are averments that on or about April 1, 1906, the copartners Ahlers & East sold their business and divided the assets of the partnership "except said ice contract and the damages which had accrued to them"; and that as to these matters the partnership continued. Defendants conclude, therefore, that in the original complaint plaintiffs sued as individuals while in the final purported amendment thereto they appeared as copartners. We do not see, however, that a cause of action different from that originally stated is set forth in the third amended complaint. The same contract, the same parties defendant, the same breach, and the same sort of damages are alleged in both pleadings. The same parties plaintiff appear in both except in one they are described as formerly copartners and in the latter as continuing to be copartners in the subject matter of the cause of action. In both pleadings the injury wrought by defendants is described as occurring during the time that the plaintiffs were copartners. In *Stewart* v. *Spaulding,* 72 Cal. 265, [13 Pac. 661], the plaintiffs in their original pleading described themselves as "late partners." The suit was on a foreign judgment rendered while they were copartners. Demurrer to this complaint was sustained for nonjoinder of parties defendant and in their amended complaint the plaintiffs omitted the designation of themselves as "late partners." A motion was made to strike the amended complaint from the files on the ground that plaintiffs had alleged a different cause of action from that originally set up. This court held that the motion was properly denied, saying: "In one sense it was a different cause of action, but plainly the same judgment was attempted to be set up in each complaint, and the same relief demanded upon the same facts, which were only stated in a different legal aspect." Appellant cites *McCord* v. *Seale,* 56 Cal. 262; *Harrison* v. *McCormick,* 69 Cal. 617, [11 Pac. 456], and *Weinrich* v. *Johnston,* 78 Cal. 255, [20 Pac. 556], but those cases merely hold that a variance arises when persons are described as individuals in the caption and as partners in the body of a pleading and that proof of partnership liability or credit will not sustain a personal judgment or *vice versa.* It is to be noticed that the doctrine announced in these cases has been somewhat modified by the later cases of *Williams* v. *Southern Pacific R. R. Co.,* 110 Cal. 461, [42

Pac. 974], and *Grangers' Union* v. *Ashe,* 12 Cal. App. 757, [108 Pac. 533]. In the case at bar, a demurrer to one of the complaints was sustained because the plaintiffs described themselves as "formerly copartners" while the pleading stated a cause of action in favor of a partnership of which they were the members. This ambiguity was corrected, but the cause of action set forth in their last pleading was essentially the same as that which was formerly alleged. The ambiguity which was called to the court's attention and because of which the demurrer was sustained was a mere defect of parties, capable of correction by a new pleading.

Defendants pleaded the bar of the statute of limitations ard assigned as error the finding of the court against them. They insist that while the obligation of the contract between the parties was founded upon a written instrument the breach of the agreement is not subject to the provisions of section 337, subdivision 1, but to those of section 339, subdivision 1, of the Code of Civil Procedure. This contention is fully answered by the opinion of this court in the case of *McCarthy* v. *Mt. Tecarte Land & Water* Co., 111 Cal. 340, [43 Pac. 959] (one of the cases cited by appellants themselves) where it is said: "In order to be founded upon an instrument in writing the instrument must, itself, contain a contract to do the thing for the nonperformance of which the action is brought."

A number of the findings are attacked by appellants upon the theory that they were not sustained by the evidence. The court found the making and delivery of the contract and the breach thereof, but appellants assert that the plaintiffs put themselves beyond the power of fulfilling their part of the agreement by selling their ice-manufacturing plant on April 1, 1906. But the damages alleged and recovered all accrued prior to March 15, 1906, and defendant Smiley testified that defendants ceased to sell ice on that date. There was, therefore, no reason why plaintiffs should have been prepared to deliver ice after March 15, 1906.

Appellants question the measure of damages applied by the court and insist also that the damages awarded were excessive, and assert that the evidence was insufficient to support the amount found to be due by way of damages. These contentions are all without merit. There was no denial of the execution by the parties of the contract which required that

defendants buy all ice for the supplying of their customers from plaintiffs. It was admitted that defendants had received from sources other than plaintiffs' factory six hundred tons of ice and that they sold four hundred and eighty tons thereof. What they did with the difference between four hundred and eighty tons and six hundred tons does not appear. Whether a surplus was kept on hand for sale and melted or the difference was used in some other way is not disclosed. Since defendants joined in the stipulation without any qualification to explain this matter we must assume that the entire six hundred tons was purchased in the course of the business of supplying their customers. It was shown that the capacity of the ice plant was sufficient to supply all of defendants' wants and that the ice for their use could be produced at an added cost to plaintiffs of twenty-five cents per ton and, therefore, at a profit of $3.75. The loss of this sum per ton on six hundred tons made the aggregate amount of damages two thousand two hundred and fifty dollars. Section 1512 of the Civil Code is as follows: "If the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties." The judgment is in accord with this rule. The rule of damages in such cases is the difference between the cost of manufacture and the contract price (*Hale* v. *Trout,* 35 Cal. 229; *Winans* v. *Sierra Lumber Co.,* 66 Cal. 61, [4 Pac. 952]). Loss of profits which are the natural result of a contract and which the law implies from a breach may be recovered without allegations of special damage. (*Tahoe Ice Co.* v. *Union Ice, Co.,* 109 Cal. 249, [41 Pac. 1020].)

Appellants call our attention to a finding in the former action between these parties which they say limits the possible recovery in this action to one dollar per ton. That case was one in which an injunction was sought. The finding in question was in part as follows: "That since the execution of said contract, and until the 24th day of July, 1905, the defendants have duly performed all the conditions on their part; and during said time, in accordance with said provisions, have advanced the sale of ice manufactured by the plaintiffs, until the said defendants were so receiving and selling from four to six tons of ice per day from the plaintiffs, at a profit to the plaintiffs of at least one dollar per ton. That on the

said 24th day of July, 1905, without the consent of the plaintiffs, and contrary to the provisions of said contract, the defendants ceased and refused to receive any more ice from the plaintiffs, and began to receive from the Union Ice Company and from ice companies other than the plaintiffs, all the ice required by the defendants, . . . to the daily loss and damage of the plaintiffs of at least sixteen dollars per day.'' It will be seen at a glance that the above quoted finding established only a minimum amount of damage as showing a reason for the issuance of an injunction. There is nothing in that finding inconsistent with the subsequent adjudication that the loss to plaintiffs was greater than one dollar a ton.

There is also a claim on the part of appellants that respondents were estopped by the previous decision and by their election of a remedy by injunction. This same point was made in the former appeal herein and was by the district court of appeal determined adversely to appellants, as follows: ''For the purpose of determining whether the issues involved in a former suit constitute a bar to a second action reference will ordinarily be had to a comparison of the record in the two cases. Here, however, the judgment in the former action which defendants attempt to plead as a bar solemnly adjudges and decrees, 'that on account of the insufficiency of the pleadings . . . in this action to warrant or sustain a judgment for damages which may have accrued to the plaintiffs, the matter of damages is hereby reversed and excepted from the operation of this judgment, to be determined by a separate action to be brought by the plaintiffs for that purpose if necessary.' Without regard to the rule, this judgment, so long as it stands, presents an insurmountable obstacle to defendants' contention on the grounds stated. There is no merit in defendants' contention that electing to sue for an injunction was a waiver of plaintiffs' right to assert a claim for damages in a subsequent action.'' This correctly disposes of the matter.

Other alleged errors are called to our attention, but we do not think it necessary to treat of them in detail. Suffice it to say that they are without merit.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.